IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.
4 Irving Place,
New York, NY 10003

LONG ISLAND LIGHTING COMPANY
175 East Old Country Road
Hicksville, NY 11801

ORANGE AND ROCKLAND UTILITIES, INC.
1 Blue Hill Plaza
Pearl River NY 10965

SAN DIEGO GAS & ELECTRIC COMPANY
101 Ash St.
San Diego CA 9212

PACIFIC GAS & ELECTRIC CO.
77 Beale St.
San Francisco, CA

                                        CIVIL ACTION NO.

INTERNATIONAL PAPER CO.
6400 Poplar Ave.
Memphis, TN 38197

WEYERHAUSER COMPANY
33663 32nd Drive South
Federal Way, WA 98003

MEADWESTVACO CORPORATION              CLASS ACTION
One High Ridge Park
Stamford, CT 06905

       Plaintiffs

              V.

SAMUEL BODMAN
Secretary of Energy, United States
1000 Independence Ave. S.W.
Washington DC 20585

1

GEORGE B. BREZNAY
Director, Office of Hearings and Appeals
U.S. Department of Energy
1000 Independence Avenue S.W.
Washington DC 20585

    Defendants


<u>COMPLAINT</u>


A. <u>NATURE OF ACTION, JURISDICTION AND VENUE</u>

    1. This is an action by claimants determined by defendants to be entitled to a pro rata share of a fixed pool of crude oil overcharge refunds held by defendants in escrow in the United States Treasury. It is brought by a group of utility and manufacturing claimants on behalf of themselves and on behalf of a class of similarly situated individual claimants.

    It seeks reversal and vacation of a Supplemental Order of the Office of Hearings and Appeals of the Department of Energy ("OHA" and "DOE") issued June 27, 2005, affirming, after review, a prior Order issued August 12, 2004 awarding $557,736 of crude oil refunds to the Lubrizol Corporation ("Lubrizol").

    2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and Sections 209-211 of the Economic Stabilization Act Amendments of 1971 ("ESA"), Pub. L. 92-210, 85 Stat. 743 (1971) as incorporated in Emergency Petroleum and Allocation Act ("EPAA"),Pub. L. 93-259,87 Stat. 627(1973).

    3. Venue is properly placed in this District pursuant to 28

U.S.C. 1391 (e).

B. <u>PARTIES</u>

    4. Plaintiffs Consolidated Edison Company of New York Inc.,
Long Island Lighting Company, Orange and Rockland Utilities Inc.,
Pacific Gas & Electric Company, and San Diego Gas & Electric
Company are electric utilities which used oil products for the
generation of electricity during the period of price control of
crude oil, August 1973 through January 1981. Plaintiffs
International Paper Company, Weyerhauser Company and MeadWestvaco
Corporation are manufacturers, principally of pulp and paper, and
used oil products in their manufacturing operations during the
period of price control of crude oil. All of the plaintiffs have
been found by the Office of Hearings and Appeals ("OHA") of the
Department of Energy ("DOE") to be entitled to pro rata shares of
crude oil refunds recovered by the DOE from producers and
resellers of crude oil.

    5. Defendant Samuel Bodman is the Secretary of Energy of the
United States, and in that capacity is charged with the
administration of the ESA, EPAA, and the Petroleum Overcharge
Distribution and Restitution Act of 1986, ("PODRA"), 15 U.S.C.
Sec. 4501 et seq.

    6. Defendant George Breznay is the Director of the Office of
Hearings and Appeals of the United States Department of Energy
("OHA" and "DOE").

C. <u>CLASS ACTION ALLEGATIONS</u>

7. Plaintiffs bring this action on behalf of themselves and all crude oil refund claimants who have been awarded crude oil refunds by defendant Breznay. Plaintiffs properly maintain a class action under Rule 23 of the Federal Rules of Civil Procedure.

7. The requirements of Rule 23(a) are all met:

(a) The class of those who will benefit from a vacation of the award or any part thereof to Lubrizol is so numerous that joinder as plaintiffs of all members is impractical. Although the exact number of the members of the class cannot now be determined, it is estimated that more than 30,000 claimants will receive such distributions and will thereby be benefitted from the availability to each of them pro rata of funds already awarded to Lubrizol, and those which would be awarded to Lubrizol in the pending final distribution.

(b) The members of the plaintiff class share common questions of fact and law, including most importantly (i) whether their respective shares of the funds reserved for claimants are being improperly reduced because of the award to Lubrizol, and (ii) more specifically, whether, and to the extent to which, the award to Lubrizol is based on purchases by Lubrizol of products not qualified as the basis for such awards because as to such products Lubrizol was not an end user entitled to a presumption

of injury, and Lubrizol did not demonstrate any injury, i.e. the inability to pass through any crude oil overcharges affecting the price of products purchased by it to its customers.

(c) The claims of the plaintiffs are typical of the claims of the class as whole. Five of the plaintiffs are utility end users of oil products refined from crude oil and three are major manufacturer end users of oil products refined from crude oil. They have been determined by OHA to be entitled to recover pro rata shares of the available crude oil refunds as have the other members of the class, and the plaintiffs are adversely affected by the OHA's award to Lubrizol on the basis of non-qualified product purchases in the same manner as are the other members of the class.

(d) The representative defendants will fairly and adequately represent the members of the class. Cumulatively, they are entitled to almost 13% of the funds which have been, and will be, improperly awarded by OHA to Lubrizol. Their counsel is experienced in this matter, in the preceding matters of significance in this matter, and in the conduct of similar class actions.

8. Class certification is proper under all three specified categories in Rule 23 (b):

(1) The prosecution of separate actions by members of the class would create the risk of (A) inconsistent or varying

adjudications which would establish incompatible standards of conduct for the defendants, as to whether the award to Lubrizol was justified, and (B) adjudications with respect to individual members of the class would as a practical matter substantially impair or impede the ability of other members of the class to protect their interest in avoiding the adverse impact upon them of the award to Lubrizol.

(2) The defendants, the DOE and OHA have acted on grounds generally applicable to the class by virtue of the award made, and to be made, to Lubrizol, thereby making appropriate the relief here sought with respect to the class as a whole.

(3) Questions of law and fact common to the members of the class as described above and throughout the Complaint, predominate over any questions affecting only individual members of the plaintiff class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

D. THE BACKGROUND WITH REGARD TO THE INTEREST OF PLAINTIFFS

9. By virtue of the award which defendants on behalf of OHA and DOE have made, and the final distribution award which they plan to make, to Lubrizol, plaintiffs and the class will be deprived of refunds which they would otherwise receive in the final distribution to be made of the funds remaining in the 20% claimants' reserve, specifically in the case of each plaintiff

and each member of the class of an amount calculated by
multiplying the award which has been made, and is planned to be
made, to Lubrizol, by a fraction, the numerator of which is the
total purchases of products refined from crude oil in the United
States during the period of crude oil price regulation (August
1973 through January, 1981) by each such plaintiff and member,
and the denominator of which is the total purchases of products
refined from crude oil in the United States during such period.
The plaintiffs cumulatively will accordingly be denied more than
$100,000  by virtue of the award which has been made and which
defendants plan to make to Lubrizol, and the other members of the
class will be denied more than $700,000 by virtue of such award.

E. THE HISTORY OF THE LUBRIZOL APPLICATION

        10. In a Decision issued August 12, 2004, OHA awarded
Lubrizol a refund of $557,736 based upon its "purchases of
348,585,189 gallons of various oils, fuel oil, gasoline and
solvents."  The Decision explains that of the approved volume
some 13 million gallons represented gasoline (approximately 7
million gallons) and solvents (approximately 6 million gallons),
and described the balance of purchases, 335,623,021 gallons as
being of "various base oils."

        11. In accordance with the consistent practice of Utilities
and Manufacturers to review all major crude oil refund awards on
behalf of approved claimants in order to preclude any dilution of

the refunds available to such previously approved claims by
virtue of unjustified awards, Utilities and Manufacturers
initiated litigation in the District Court for the District of
Columbia District, as of Consolidated Edison Company of New York
Inc. Et al v. Spencer Abraham, Secretary of Energy et al, Civil
Action 04-1732 (EGS). In their Complaint, Utilities and
Manufacturers asserted there was insufficient basis for the award
based on the purchase of 335.6 million gallons of base oils,
noting inter alia, the absence of proof that such base oils were
the product of a crude oil refinery subject to the Entitlements
Program, and the absence of proof that all such purchases were
made in the United States.

12. By Motion, DOE sought and obtained the dismissal of the
Complaint without prejudice so that it might review the award. In
such Motion, DOE submitted that in its further proceedings
reviewing the award, "plaintiffs' counsel will have full
opportunity to intervene and submit evidence and pleadings on any
matter germane to the issues involved in the proceeding."

13. After receiving two written submissions from Lubrizol,
and responses thereto by the Utilities and Manufacturers, on June
27, 2005, OHA issued a Supplemental Order reviewing and rejecting
the objections of Utilities and Manufacturers to the award of
crude oil refunds on the basis of the purchase of the 335.6
gallons of "base oils.

14. Specifically, as it relates to this appeal, OHA considered and rejected the challenge to such an award made by Utilities and Manufacturers "on the basis that Lubrizol essentially was a reseller of petroleum products and as such is not entitled to a refund in the crude oil refund proceeding." Although Utilities and Manufacturers also argued that the Lubrizol had failed to demonstrate that the base oils were produced in a crude oil refinery, and that Lubrizol had failed to demonstrate that the refineries from which the base oils were purchased were domestic refineries subject to the Entitlements Program, both requisites for an award of crude oil refunds, Utilities and Manufacturers do not here appeal OHA's determination that such requirements were satisfied, focusing instead and solely on the failure of Lubrizol to demonstrate that it was an end user of the base oils, and OHA's acknowledgment that an award of crude oil refunds for Lubrizol's base oil purchases would mean that two or more claimants could recover on the same gallon of base oils, thereby offending the basic assumption and the basic principle of the crude oil refund program.

F.  THE REGULATORY BACKGROUND

15. Pursuant to a Settlement Agreement in In re The Department of Energy Stripper Well Exemption Litigation, ("Stripper Well"), 653 F. Supp. 108 (D. Kan. 1986), in an Order

published April 10, 1987, DOE committed itself to a program in
which end users of refined petroleum products purchased in the
United States during the period of price regulation of crude oil,
August 1973 through January 1981 would be eligible to receive an
appropriate portion of the crude oil refunds recovered by the
DOE, i.e. for each claimant end user, the percentage of the
refunds which its purchase volume represented of the total end
use consumption of refined oil products during the regulatory
period as found by DOE, to wit 2,020,997,335,000 gallons. DOE
further committed to calculating such by dividing the "crude oil
refund recoveries" which it obtained by the 2,020,997,335,000
gallons of refined petroleum products purchased by end users
to calculate a per gallon ("volumetric") amount, and then
distributing to each successful claimant in the proceedings
before it an amount calculated by multiplying such "volumetric"
by the volume of qualifying purchases by such claimant. In
determinating the "crude oil refund recoveries", DOE determined
to add to the actual amounts recovered by it, the amounts
initially distributed in Stripper Well to those other than
Refiners, Resellers and Retailers i.e. $985 million, so that the
claimants in the DOE proceedings would have "full parity" with
those end users who qualified for, and received, funds in
Stripper Well; the end users participating in Stripper Well
received from Stripper Well funds their pro rata share both of

the funds recovered in <u>Stripper Well</u> and the anticipated amounts
to be distributed by DOE to the claimants in its crude oil refund
proceedings, and accordingly, the DOE declared that "full parity"
required a similar treatment for those claiming in the DOE
proceedings, i.e. receipt from the funds to be distributed by DOE
of their pro rata share of the funds distributed in <u>Stripper Well</u>
as well as of the funds to be distributed in the DOE proceedings.

The amounts distributed from <u>Stripper Well</u> funds to refiners,
resellers and retailers represented such portion of both the
funds in <u>Stripper Well</u> and the funds to be distributed in the DOE
proceedings deemed by those negotiating the settlement to reflect
the extent to which refiners, resellers and retailers had
absorbed the crude oil overcharges for which refunds were
recovered before passing along the overcharges downstream to the
end users of refined petroleum products. The end users, refiners,
resellers and retailers recovering in <u>Stripper Well</u> were required
to waive any right to recovery in the DOE crude oil refund
proceedings, reflecting the fact that they were recovering in
<u>Stripper Well</u> an appropriate share of the funds to be distributed
in the DOE crude oil refund proceedings.

16. In the DOE crude oil refund proceedings some 100,000
claims were filed, practically all of them for the end use of
refined petroleum products. As to such end users-- those who used
refined petroleum products to produce non-petroleum products for

11

which no subsequent purchaser could assert the right to crude oil
refunds-- the DOE recognized a presumption of injury, i.e. that
they were unable to pass through the overcharge they had paid to
their customers. In those few cases in which resellers of refined
petroleum products applied for crude oil refunds, the DOE
consistently held that they were not entitled to a presumption of
injury, but were required to prove the extent of their absorption
of the injury caused by crude oil overcharges. To the best of
plaintiffs' knowledge, no reseller claimant was found by DOE to
have provided such proof; accordingly, no reseller of refined
products has been awarded crude oil refunds in the DOE
proceedings.

17. In the Stripper Well Settlement Agreement, it was
assumed by all parties, including the DOE, that 20% of the
recovered crude oil refunds would be more than sufficient to
provide the refunds required by the "volumetric" formula for all
claimants who would apply; accordingly, the balance of the
recovered funds upon their recovery were divided equally between
the United States Treasury and the States of the United States,
without awaiting the processing of claims by end users. The basis
of the assumption that 20% would be sufficient was that many end
users would have claims too small to file and many eligible
claims would share the Stripper Well funds and would waive the
right to claim in the DOE proceedings.

18. In fact, claims were filed and found valid which would require substantially more than 20% of the recovered funds were DOE to implement the "volumetric" formula to which it had committed.

19. Because of the limitation that only 20% of the recovered funds could be used to fund the "volumetric" formula for claimants awards, the successful claimants in the DOE proceedings, i.e. plaintiffs and the class, have been and will be unable to recover the full amount of the "volumetric" to which they are entitled pursuant to the DOE formula. The extent to which plaintiffs and the class will be denied recovery of the "volumetric" will be increased to the extent to which awards are made on the basis of purchase volumes not qualified for crude oil refund awards, including specifically any volume of purchases for which claims are made by both resellers and end users.

20. Not only did DOE initially promulgate a formula which assumed that there would be only one claimant eligible as to each gallon of purchased petroleum product (Notice at 52 Fed. Reg. 11737, April 10, 1997), but it continued to demonstrate commitment to the one gallon-one claim principle, inter alia (i) by imposing on reseller claimants a burden of demonstrating that they absorbed the overcharges and in the absence of such proof consistently rejecting reseller claims, and (ii) when setting policy as to qualifying products, expressing concern where such

13

might award refunds for product not produced in a crude oil refinery, and therefore not in the 2,020,997,335,000 gallons used in the calculation of the "volumetric." (Notice at 57 Fed. Reg. 30731, July 10, 1992).

    G.   <u>THE RELEVANT FACTS IN THE LUBRIZOL APPLICATION</u>

21. The Objections filed by Utilities and Manufacturers upon the remand to OHA focused on the acknowledgment by Lubrizol that the 335.6 million gallons of "base oil" for which Lubrizol claimed refunds are properly described as "carrying agents" because they are used as "diluents for chemicals that would otherwise be too thick to handle conveniently. Additives are made in liquid form, using oils, for ease of incorporation into the customer's product. In essence these oils 'carry' the additive chemicals–– thus they are referred to as carrying agents." Utilities and Manufacturers noted that Lubrizol had acknowledged that a substantial portion of its "additive packages" containing the base oils as diluents were sold to domestic oil companies, and that the Lubrizol products were added by its customers to petroleum products, and then sold as refined petroleum product. Utilities and Manufacturers asserted that, accordingly, there were in many, if not most, cases downstream end users who could assert an end use claim on petroleum product including the "base oils" on the basis of which much of Lubrizol's claim rested.

22. The Utilities and Manufacturers Objections noted that

14

earlier in the proceedings before OHA, OHA had effectively
recognized that Lubrizol was a reseller not an end user as to
such base oils by advising Lubrizol that as a reseller it was
obligated to "make a detailed showing of injury"; implicit in
such advice was that OHA had found that Lubrizol's previous
submission attempting to demonstrate injury was inadequate to do
so.

23. Faced with the focus of Utilities and Manufacturers'
Objections on the issue of whether Lubrizol was a reseller, not
an end user, because its products were refined petroleum product
subject to crude oil refund claims by those downstream (either
immediately or after the addition of other petroleum product by
refiners or others in the oil industry), Lubrizol responded by
carefully attempting to avoid the basic issue-- whether Lubrizol
was not an end user but rather a reseller of the 335.6 million
gallons of base oils to which it added chemicals to make what it
describes as an "Lubrizol Additive Package."

24. In its response, Lubrizol effectively acknowledged that
there were end users downstream who would be able to claim crude
oil refunds based upon the very same base oil volume upon which
Lubrizol was relying for its claim. Lubrizol explained that it
sells its "additive packages" containing the base oil to
customers who "blend that package with oil that they made or
purchased from a refiner or resellers," to produce what Lubrizol

15

describes as "fully formulated lubricant." Lubrizol does not deny, and indeed it seems clear from the material submitted by it that it acknowledges, that a substantial amount of its "additive package" product, including the "base oils" produced by it, finds its way into engine oils, gasoline and diesel fuels after Lubrizol's customers add additional oil ("customer base stock") to make "fully formulated lubricants."

25. Thus, it seems clear that the base oil gallons on the basis of which Lubrizol claims crude oil refunds are part of gallons of refined petroleum product ultimately purchased and used by end users, in automobiles, trucks, tractors, industrial machines etc., and most importantly are therefore subject to a claim for crude oil refunds by such end users.

26. Lubrizol provided no information which would enable OHA to determine to what extent the base oils it claimed could also be claimed by an end user downstream even though it knew that such was the focus of Utilities and Manufacturers' objections. The implication of Lubrizol's failure to provide such information is that Utilities and Manufacturers were correct in asserting that the "base oils" claimed by Lubrizol could properly be claimed by others downstream, and perhaps in many cases were so doubly claimed.

27. As Utilities and Manufacturers explained, using hypothetical figures in the absence of Lubrizol's willingness to

provide actual relevant volumes, if one gallon of base oil used
to make an "additive package" and one gallon in chemicals added
by Lubrizol has added to it two gallons of "customer base stock"
by the marketer to which Lubrizol sells its product, and the
"fully formulated lubricant" which is the result is then added to
20 gallons of gasoline, and sold to a motorist or trucker, the
gallons for which the end user would claim is 24 gallons, i.e.
the gallon of base oil used by Lubrizol, the gallon of chemicals
added by Lubrizol, the two gallons of "customer base stock" and
the 20 gallons of gasoline. If Lubrizol is permitted to recover
crude oil refunds for the one gallon of base oil, the Lubrizol
customer is permitted to claim for the two gallons of "customer
base stock" which it had purchased and which it added, and the
farmer or truck driver permitted to claim for the 24 gallons of
gasoline or diesel which he purchased, the effect would be claims
of 27 gallons of end use whereas in fact the end use gallons were
only 24.

H.  THE OHA SUPPLEMENTAL ORDER AFFIRMING ITS PRIOR DECISION

    28. In its Supplemental Order of June 27, 2005 from which
this appeal is taken, OHA recognized the possibility as asserted
by utilities and Manufacturers that awarding refunds to Lubrizol
on its base oil purchases might result in a violation of the one
gallon-one refund principle, observing only that OHA had "no
evidence indicating what percentage of Lubrizol products were

17

sold to oil companies... (and that) it is uncertain how or in what proportions oil companies mixed their Lubrizol products as alleged in the hypothetical". OHA accordingly concluded that the "evidence is not sufficient for us to conclude that granting Lubrizol a refund as an end-user would result in significant double counting of petroleum product gallons for refund purposes."

29. The OHA Supplemental Order declined to require Lubrizol to provide the information required for an assessment of the extent of the double counting problem on the basis that such "would be inappropriate given the purpose of this proceeding and the ground rules announced at the outset of these proceedings." (citing for such "ground rules" a footnote in an April 10, 1987 Order which is in fact inconsistent with the body of that Order).

30. OHA cited as a further reason for declining to require Lubrizol to bear its burden of demonstrating whether the base oils were in fact double counted that it is too late to do so because "OHA has already announced procedures for conclusion of the crude oil refund proceeding", ignoring the fact that the "timing" problem was caused by OHA delaying from December 22, 1987 when Lubrizol filed its claim until August 12, 2004 to file its initial decision granting the Lubrizol award.

31. OHA concluded that Lubrizol was an end-user entitled to a presumption of injury because it was not a reseller, excluding

a characterization of Lubrizol as a "reseller" because "by adding chemicals to the petroleum products it purchased from refineries, (Lubrizol) substantially changed the form of the petroleum products it purchased." For that finding, OHA evidently relied on Lubrizol's statement that because the base oils were added to chemicals "oil is an integral part of their (the 'additive packages' produced by Lubrizol) manufacture."

31. Indeed, OHA's explanation that the "additive packages were then sold (by Lubrizol) not as petroleum products themselves but as a product which when added to a purchaser's oil would produce a change in the physical and chemical properties of the purchaser's oil" might well have led not only to the double counting described in the hypothetical, but to triple counting, i.e. the ability of three separate claimants to assert the right to crude oil refunds on the same gallon of base oils. Lubrizol would be entitled to claim on the gallon of base oil which it added to its chemicals to make the "additive package." The purchaser from Lubrizol, if a refiner or reseller of oil products, would be entitled to claim on the basis of the gallon of base oil included in the "additive package" purchased frm Lubrizol (as well as on the basis of the oil into which it mixed the additive package) because the "resulting change in the physical and chemical properties of the purchaser's oil" would make it, too, an end-user. And, finally the true end user to whom

the oil with additives was sold and who used it, e.g. to power an engine, would be entitled to crude oil refunds on the basis of the same included gallon of base oil.

    I. <u>CAUSE OF ACTION</u>

    32. The allegations of paragraphs 1 through 31 are incorporated herein by reference.

    33. OHA erred in holding that it was free to ignore the basic principle of the crude oil refund program which it had adopted, i.e. that only one claimant could be awarded refunds as the end user of each gallon of petroleum product consumed in the United States during the regulatory period. None of OHA's asserted reasons for doing so have merit– (i) the footnote cited by OHA is irrelevant and inconsistent with the text of the order establishing the one gallon-one refund principle, (ii) the impending final distribution of refunds does not justify ignoring the basic principle of the crude oil refund proceedings, particularly where it was OHA's delay in passing on the application which caused the timeliness problem, and (iii) the lack of evidence as to the extent of double counting was the result of a deliberate choice by Lubrizol not to provide such evidence.

    34. OHA improperly declined to require Lubrizol to provide evidence which would enable OHA to determine whether the base oils for which it was here awarded refunds could be claimed as

the basis for crude oil refunds by one or more other claimants. Such evidence was relevant, indeed critical, in determining whether Lubrizol was indeed the end user of the base oils, or only a reseller.

35. There was no substantial evidence, indeed no evidence at all, that the form of the base oils purchased by Lubrizol was "substantially changed" when they were mixed by Lubrizol with chemicals which it produced. Accordingly, Lubrizol is properly characterized as a reseller of the base oils. As such, it is not entitled to crude oil refunds absent proof of its injury, and Lubrizol did not provide proof of such, nor did OHA find that Lubrizol had demonstrated injury.

36. For the reasons set forth in paragraphs 33 through 35, OHA's award to Lubrizol, and its Order affirming such award, were neither based on substantial evidence nor rational.

WHEREFORE, plaintiffs pray for Orders of this Court as follows:

(a) An Order certifying the class and the plaintiffs as representatives of the class;

(b) An Order reversing and vacating the DOE Decision of June 27, 2005 affirming its award of crude oil refunds to Lubrizol, and remanding the matter to OHA,

(i) with a direction to determine to what extent the

gallons of base oils for which Lubrizol claims refunds as an end user were subject to a claim by one or more downstream purchasers as the basis for crude oil refunds, and to such extent to deny crude oil refunds to Lubrizol on the basis of such base oils, and

(ii) with a direction to determine whether the mixing of the base oils with Lubrizol's chemicals did not substantially change the form of such base oils, and to such extent to deny crude oil refunds to Lubrizol on the basis of such base oils, and

(iii) for a recalculation of the award to Lubrizol reflecting the elimination of purchases ineligible as a result of the criteria set forth in (i) and (ii) above;

(c) Awarding the plaintiffs their costs, including a reasonable attorney's fee; and

(d) Granting such other and further relief as may be just and proper.


Respectfully submitted,


_____

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
DC Bar 973578

July 26, 2005                          Attorney for Plaintiffs


22