IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC. Et al


      Plaintiffs


        V.                      CIVIL ACTION
                              NO. 1:05CV01467(EGS)
Secretary of Energy, United States
et


      Defendants

PLAINTIFFS' STATEMENT OF POINTS AND AUTHORITIES

IN RESPONSE TO FEDERAL DEFENDANTS' MOTION TO DISMISS

OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
DC Bar 973578

January 26, 2006      Attorney for Plaintiffs

TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT                    1

I   DOE'S MEMORANDUM ACKNOWLEDGES THAT THE AWARD
OF CRUDE OIL REFUNDS TO LUBRIZOL ENDORSES
DOUBLE-COUNTING, INDEED TRIPLE COUNTING                 2

II   DOUBLE-COUNTING IS INCONSISTENT WITH, AND
VIOLATES, THE PRINCIPLE WHICH INFORMS THE
DOE-PROMULGATED FORMULA FOR CRUDE OIL REFUNDS           3

III   DOE'S ATTEMPT TO JUSTIFY A "DOUBLE-COUNTING"
AWARD ON THE BASIS OF CHARACTERIZING LUBRIZOL AN
"END USER", RATHER THAN A RESELLER, IS OF NO AVAIL      5

IV   DOE'S MEMORANDUM DEMONSTRATES, AS DID OHA'S
AWARD DECISION, THAT DOE AGREES THAT IF A SIGNIFICANT
PORTION OF THE VOLUME OF BASE OILS UPON WHICH LUBRIZOL
CLAIMS REFUNDS CAN BE THE BASIS OF A CLAIM BY A
DOWNSTREAM END USER, LUBRIZOL IS NOT ENTITLED TO
CRUDE OIL REFUNDS ON THE BASIS OF SUCH BASE OILS        11

CONCLUSION                                             13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC. Et al

    Plaintiffs

       V.                           CIVIL ACTION
                                   NO. 1:05CV01467(EGS)
SAMUEL BODMAN
Secretary of Energy, United States
et

    Defendants

---

## PLAINTIFFS' STATEMENT OF POINTS AND AUTHORITIES

## IN RESPONSE TO FEDERAL DEFENDANTS' MOTION TO DISMISS

## OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

### INTRODUCTION AND SUMMARY OF ARGUMENT

The Federal Defendants ("Department of Energy" or "DOE") have conceded the central points made by plaintiffs ("Utilities and Manufacturers" in their motion for summary judgment-- (i) the formula adopted by DOE for determining the amount of refund per gallon to be paid to claimants assumes that there will not be two claimants as to the same gallon, i.e. that there will be no "double counting"), (ii) that in the case of the award to the Lubrizol Corporation ("Lubrizol"), the gallons of base oils claimed by Lubrizol are indeed subject to one or more additional

1

crude oil refund claims by others, i.e. "double counting," and (iii) DOE, acting by its Office of Hearings and Appeals ("OHA") has determined to abandon the central principle of its own refund formula and countenance the resulting "double counting" which its award to Lubrizol effectuates.

Such an award is one without the requisite "rational basis" and is not supported by the required "substantial evidence." Phoenix Petroleum Co. V. Federal Regulatory Commission, 95 F. 3d 1555 (Fed. Cir. 1996), International Drilling and Energy Corporation v. Watkins, 920 F. 2d 14 (TECA 1990).

ARGUMENT

I   DOE'S MEMORANDUM ACKNOWLEDGES THAT THE AWARD OF CRUDE OIL REFUNDS TO LUBRIZOL ENDORSES DOUBLE-COUNTING, INDEED TRIPLE COUNTING

In the closing paragraph of its Argument (Federal Defendants Memorandum, at 15), DOE acknowledges that the base oils on the basis of which it has made substantially all of the award to Lubrizol will support a claim for refunds by at least two downstream purchasers of the "additive packages" produced and sold by Lubrizol-- (i) the immediate purchaser from Lubrizol who will be entitled to claim as an end user because the addition of the Lubrizol packages to its oil will "produce a change in the physical and chemical properties of the purchaser' oil," and

2

(ii) the ultimate end user (e.g. trucker or manufacturer) of the refined product produced by Lubrizol's purchaser.

In DOE's view, all three-- Lubrizol, the purchaser from Lubrizol, and the end user who consumes the oil product or converts it into a non-oil product-- are end users entitled to a presumption of injury suffered as a result of crude oil overcharges; Lubrizol and its customer are end users in DOE's view because both 'substantially changed the form of the petroleum products it purchased and thus was not a 'reseller''".

Id

The result is that the volume of base oils which Lubrizol mixed with its chemicals will be the basis of crude oil refund claims by Lubrizol, the purchaser from Lubrizol, and the end user. (See the hypothetical in Plaintiff's Summary Judgment Memorandum, at 16).

Such a double (or triple) recovery on the same volume of refined products is described by DOE as "double) (or, more properly triple) counting."

II   DOUBLE-COUNTING IS INCONSISTENT WITH, AND VIOLATES, THE PRINCIPLE WHICH INFORMS THE DOE-PROMULGATED FORMULA FOR CRUDE OIL REFUNDS

As DOE here acknowledges (DOE Memorandum, at 5) the DOE-promulgated formula for determining the per gallon refund to which each claimant is entitled "calculates the amount refunded

3

per gallon according to the 'volumetric method', i.e. by dividing the total crude oil overcharge moneys available by the total U.S. consumption of petroleum products while price controls were in effect."

The principle informing that formula is that for each gallon of petroleum product consumed there is one claimant, i.e. the end user who consumes the refined product or converts it into a non-petroleum product and as to which refined product there is accordingly no other potential claimant.

As noted in Plaintiffs' Summery Judgment Memorandum, and as not denied by DOE, permitting more than one claimant to claim on he basis of the same volume of refined product necessarily reduces the per gallon or volumetric amount which each successful claimant will receive.

Had DOE intended to permit such duplicate recoveries on the basis of the same volumes, it would not have promulgated a formula which assumed one-gallon-one claim, as it did. Instead, it would have estimated the extent to which there would be volumes of refined product as to which there could be multiple claims at various distribution levels, e.g. 10%, and would then have used as the divisor a number reflecting such double use, e.g. in the case where it estimated there would be double claims as to 10% of the refined product, 110% of the actual end use volume.

4

Certainly, DOE was aware that there would be such instances where there would be two or more claimants to the same refined product volume.

Its failure to reflect such in its formula creates the inescapable inference that in such a situation, DOE would only award a refund to one claimant in the distribution chain. Moreover, because it would be impossible to determine which portion of the volume purchased by the ultimate end user was subject to a claim for refunds by an upstream purchaser, the award for such "double-counted" volumes would have to be made to the ultimate end user, and not to such an upstream purchaser as Lubrizol.

Thus, the award for crude oil refunds on the basis of the base oils which Lubrizol used to dilute its chemicals to make an additive package would go not to Lubrizol, or to the purchaser to whom Lubrizol sold its additive package and who added oil to it to make a fully formed lubricant, or to its customer's customer who might mix the lubricant with gasoline or oil, but instead, and only, to the end user who consumed the refined product which contained the base oils which Lubrizol used to dilute its chemicals.

III    <u>DOE'S ATTEMPT TO JUSTIFY A "DOUBLE-COUNTING" AWARD ON THE BASIS OF CHARACTERIZING LUBRIZOL AN "END USER", RATHER THAN A RESELLER, IS OF NO AVAIL</u>

DOE's attempt to justify the award to Lubrizol as to volumes which would be claimed by the actual downstream end user has two bases: (i) representing that the base oils were "substantially changed... by (Lubrizol) adding various chemicals to produce additive packages" (DOE Memorandum, at 15), and (ii) that because Lubrizol thereby "substantially changed their (the base oils) form," it was not a reseller obligated to prove injury but rather an end user entitled to a presumption of injury.

The first of such bases misrepresents the factual situation. And the second ignores the relevant issue of whether there was a downstream claimant and instead employs a definition of "reseller" promulgated for the entire different purpose of determining whether to regulate the price charged:

1. <u>The Evidence Demonstrates That There Was No Change In Form As to At Least a Significant Portion of the Base Oils, and Therefore Lubrizol Was Properly Considered a "Reseller" of the Base Oils</u>

OHA's statement that "Lubrizol substantially changed the nature of the petroleum products it purchased by adding various chemicals to different types of petroleum products to produce 'additive packages,'" (Administrative Record, 711-712) is the

6

basis for OHA's holding that Lubrizol is not a reseller but an end user. In so holding, OHA relies on the definition of a reseller in the price regulations, i.e. that a reseller is one who resells the purchased "covered products...without substantially changing their form...." 10 C.F.R. Sec. 212.31. (1980).

But OHA's assertion that the addition of the base oils to its chemicals "substantially changed" the nature of such base oils is belied by Lubrizol's own explanation of the manner in which the base oils are used.

As Lubrizol explained to OHA, the base oils are properly described as "carrying agents" because they are used as "diluents for chemicals that would otherwise be too thick to handle conveniently. Additives are made in liquid form, using oils, for ease of incorporation into the customer's product. In essence these oils 'carry' the additive chemicals-- thus they are referred to as carrying agents." (Administrative Record, p. 89).

Such an assertion demonstrates that in fact there is no substantial change in form of the base oils.

Accordingly even if the fact of "substantial change" in purchased petroleum product did make a firm which would otherwise be a reseller an end user, Lubrizol's own submission demonstrates that there was no "substantial change" in the petroleum products used to dilute the Lubrizol chemicals, and accordingly Lubrizol

is a reseller. As to such base oils, it is a firm "which carries
on the trade or business of purchasing covered products, and
resell(s) them without substantially changing their form to
purchasers other than ultimate consumers," thus making it a
reseller, with the concomitant requirement that it demonstrate
injury if it is to recover crude oil refunds.

    2. <u>The Question of Whether Lubrizol Was a "Reseller" of the
Base Oils Under The Price Regulations Is Not The Relevant Factor
In Determining Whether It is An End User Entitled To A
Presumption of Injury</u>

    The definition of a "reseller" used to determine whether a
firm is subject to the price regulations is not the relevant
factor in determining whether a firm is an end user entitled to
the presumption that it was injured by crude oil overcharges
passed through in the price of refined petroleum products, and
therefore entitled to crude oil refunds without proving injury.

    In the first place, the definition itself demonstrates its
irrelevancy when the issue is entitlement to crude oil refunds.
The critical factor in determining whether a firm is a reseller
subject to regulations is whether it is purchasing and reselling
"covered products", i.e. price-regulated products. So the
definition provides. If a firm is purchasing products which are
not price regulated, then the definition has no application.

    In contrast, in determining whether a firm purchasing

8

refined petroleum products is entitled to crude oil refunds, it
is irrelevant whether the purchased petroleum products are price
regulated. Indeed for most of the period of crude oil price
regulation many, if not most, of refined petroleum products were
not price regulated. OHA never made a determination as to the
right to crude oil refunds dependent on whether the refined
product purchased and the base of the crude oil refund
application was a "covered product."

That difference demonstrates the inapplicability of the
definition of a "reseller" for price regulation purposes when the
issue is the right to crude oil refunds.

In the second place, there is nothing in the regulations
which suggests that a firm not a reseller because of a change in
form becomes an end user.

Accordingly, even if the price regulation definition of
"reseller" was relevant in determining the right to crude oil
refunds, and Lubrizol is determined not to be a "reseller," such
does not make it an "end user." It merely removes Lubrizol from
price regulation as to the products it sells.

3. The Critical Factor In Determining Whether Lubrizol Is an
End User Entitled to a Presumption of Injury Is Instead Whether
The Refined Product Volume For Which It Claims Crude Oil Refunds
May Be Claimed As The Basis For Crude Oil Refunds By A Downstream
End User

9

The relevant definition of an "end user" for purposes of claiming crude oil refunds on the basis of a presumption of injury is implicit in the formula DOE promulgated for determining the per gallon or volumetric entitlement of claimants.

By adopting a formula which was based upon the volume of consumption by ultimate end users-- those either consuming refined petroleum products or converting them into a non-petroleum product which could not then become part of a petroleum product used by an end user downstream-- DOE was so defining an end user for purposes of crude oil refunds.

Lubrizol is clearly not such an end user. So DOE here acknowledges. Lubrizol's product is "to be added to a purchaser's oil" (DOE Memorandum, at 15). That purchaser's oil, and the volume of base oils in the Lubrizol additive package is then passed down, ultimately to an end user who can claim crude oil refunds on the basis of a volume of purchased refined product which includes the volume of base oils which Lubrizol used to dilute its chemicals.

Accordingly for the purpose of the crude oil refund process Lubrizol is not an end user. Given the formula which DOE promulgated for awarding crude oil refunds, there can be only one end user of each gallon of refined oil product, and that end user can only be the ultimate end user, i.e. a firm which either consumed the refined petroleum product or converted it into a

10

non-petroleum product <u>which could not then become part of a</u> <u>petroleum product used by an end user downstream</u>.

IV    <u>DOE'S MEMORANDUM DEMONSTRATES, AS DID OHA'S AWARD DECISION,</u> <u>THAT DOE AGREES THAT IF A SIGNIFICANT PORTION OF THE VOLUME OF</u> <u>BASE OILS UPON WHICH LUBRIZOL CLAIMS REFUNDS CAN BE THE BASIS OF</u> <u>A CLAIM BY A DOWNSTREAM END USER, LUBRIZOL IS NOT ENTITLED TO</u> <u>CRUDE OIL REFUNDS ON THE BASIS OF SUCH BASE OILS</u>

DOE relies, as did OHA in making the award to Lubrizol, on the lack of evidence as to what portion of the base oils for which Lubrizol claimed refunds was also subject to claim and/or actually claimed by a downstream end user as the basis for crude oil refunds, i.e. the percentage of the base oils as to which there could have been, or in fact was, double counting.

As Utilities and Manufacturers pointed out in their Summary Judgment Memorandum, the lack of evidence as to the extent of double counting provides no solace to DOE for two critical reasons:

(i) the lack of evidence is attributable to Lubrizol's failure to provide it, and even more importantly OHA's failure to require it to be provided by Lubrizol, in the face of questions which made such evidence critically important to determine the extent of double counting; had Lubrizol provided evidence as to its customers and their use of the Lubrizol additive packages,

OHA could have determined the extent of the double counting probability. Moreover, in the absence of a hearing or an available discovery procedure, Utilities and Manufacturers were unable to obtain the requisite information from Lubrizol. Only OHA could have pressed for such information, and advised Lubrizol, as it should have , that absent such information no award would be made as to the base oil volume;

(ii) OHA's reliance on the lack of evidence as to the extent of double counting as a basis for rejecting the Utilities and Manufacturers' challenge constitutes an acknowledgment by OHA that had the evidence established a significant extent of double counting, to that extent crude oil refunds should have been denied to Lubrizol.

It was not rational for OHA to rely on a lack of evidence as the basis of rejecting the Utilities and Manufacturers' challenge when it was OHA, and OHA alone, which could have required the production of such evidence by Lubrizol.

Although the time for Lubrizol to provide such evidence is long since past, if the Court believes, as evidently did OHA, that such evidence of double counting is critically important, then at the minimum the award should be set aside and the matter remanded with instructions to OHA to demand the evidence from Lubrizol, and in its absence to deny an award on the base oils.

12

<u>CONCLUSION</u>

OHA's award to the Lubrizol Corporation on the basis of its purchase of 335.6 million gallons of "various base oils" is in violation of the central principle which has informed the adjudication of more than 100,000 claims, i.e. that the award of crude oil refunds on the basis of a presumption of injury can be made only to end users consuming petroleum products or converting them into non-petroleum products which are not subject to a further claim for crude oil refunds by a subsequent purchaser.

Accordingly, such an award is not supported by the requisite substantial evidence nor is it rational.

Summary Judgment should be entered reversing and vacating the award to Lubrizol and remanding the matter to OHA for the elimination of any award to Lubrizol based on its purchases of the "various base oils."

Respectfully submitted,

_____

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
DC Bar 973578

January 26, 2006          Attorney for Plaintiffs

13