# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Consolidated Edison Company of** ) | |
| **New York, Inc.,** *et al.,* ) | |
| ) | |
| **Plaintiffs,** ) | |
| v. ) | Civil Action No. 1:05CV01467-RWR |
| ) | |
| ) | |
| **Spencer Abraham, Secretary of Energy,** *et al.,*) | |
| ) | |
| **Defendants.** ) | |

### FEDERAL DEFENDANTS' MEMORANDUM IN OPPOSITION TO
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs' memorandum makes two basic arguments attacking the Office of Hearings and Appeals' crude oil refund award to Lubrizol Corporation ("Lubrizol"). First, plaintiffs argue that, because the volumes of petroleum products claimed by Lubrizol theoretically might form the basis for another party's refund award, the Lubrizol award violates a "rule" precluding more than one award for each gallon of crude oil used (Plaintiffs' memorandum at 19 to 22 and 32 to 38). Second, plaintiffs argue that Lubrizol did not process the source oil into products which it then sold, but was merely a reseller of the source oil to ultimate end users. (Plaintiffs' memorandum at 22 to 32).

As we have explained in our initial brief, plaintiffs' speculation about the hypothetical possibility of double counting is beside the point. Contrary to plaintiff's invented assertion, the ground rules for the refund proceeding do not require refund applicants to disprove the possibility of double counting volumes. Moreover, plaintiffs' speculation is wholly insufficient to set aside OHA's reasonable determination that Lubrizol's own use of the petroleum products it purchased qualified it for a refund. (Government's Memorandum at 10-11, 12-13). For that

same reason OHA also correctly rejected plaintiffs' assertion that Lubrizol was a reseller, not an end user, of the petroleum products forming the basis of its refund claims. (Government's Initial Memorandum at 9-10, 14-15).

    1. Plaintiffs' criticisms of OHA's decisions must be evaluated under the applicable standard of review for such decisions established by the Federal Circuit and its predecessor in deciding cases under the former price control authorities, the Temporary Emergency Court of Appeals. The standard for review of OHA's decision is set forth in **Phoenix Petroleum Co. v. Federal Energy Regulatory Commission,** 95 F.3d 1555 (Fed. Cir. 1996). In that case the Federal Circuit stated,

> Thus, this court must necessarily apply a standard of review. We see no reason to deviate from the standard of review applied by TECA. As stated in *MAPCO*, the court will set aside an EPAA/ESA agency action if it is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence. We recognize DOE's administrative expertise, accord the agency's determination great deference, and must approve the DOE decision if there is a rational basis for it. *MAPCO*, 998 F.2d 239.

95 F.3d at 1567. This is in accord with earlier TECA precedent in **International Drilling and Energy Corporation v. Watkins,** 920 F.2d 14 (TECA 1990). In that case the court stated,

> Judicial review of an administrative order of the DOE is statutorily established by the Economic Stabilization Act of 1970 (ESA). Section 211(d)(1) of the ESA provides that no order shall be set aside "unless a final judgment determines that such an order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." 12 U.S.C. § 1904 note, incorporated by reference in the Emergency Petroleum Allocation Act of 1973 [EPAA], 15 U.S.C. §754(a)(1). [footnote omitted] The court's role in this judicial review is guided by certain well settled principles:
>
>> A court should recognize the administrative expertise of an agency decision maker and consequently accord the agency's determination "great deference." [citations omitted] Thus "the judicial role requires approval of the DOE's decision if there is a rational basis for it." [citation omitted]

*Id.* at 18.  Further, OHA is accorded deference in administering its own regulations and procedures.  See *Sinclair Oil Corp. v. Abraham*, 291 F.3d 822, 826-827 (Fed Cir. 2002).

2.  Even putting aside this deferential standard of review, plaintiffs' criticisms of OHA's refund award are plainly without merit.  In the agency refund proceedings OHA found that Lubrizol submitted sufficient evidence to support its claimed volume of petroleum products.  Administrative Record ("AR") at 713.  And, for each of the products it purchased, OHA found that Lubrizol submitted sufficient evidence that it purchased each of the claimed products at a domestic refinery and that the products it purchased are products eligible for a refund in the crude oil proceeding.  ***Ibid.***  Lubrizol likewise demonstrated that it had utilized its source oils for the production of products which were sold to other manufacturers for further manufacturing purposes.  Lubrizol's Dr. Schroeck explained the process by which these source oils were converted into the products that Lubrizol sold.

> The bulk of Lubrizol's application related to Lubrizol's purchase of oils that were used by Lubrizol to make chemical components of additive packages. The additive packages are then sold to Lubrizol's customers, who blend the additive packages with other oils that the customer has made or purchased to make a finished lubricant product.
>
> At one time refiners were able to make a lubricating oil that would meet the lubrication needs of end users. Over time, it was discovered that chemical additives needed to be combined with the lubricating oil from the refinery to make a finished lubricant product.
>
> Lubrizol is a specialty chemical company, and during the period being considered in this matter [the petroleum price control period], Lubrizol was engaged in the making of chemical additives that were sold to companies to be blended with oil to form a finished lubricant product. Additives include such things as: (a) dispersants and detergents, which are chemicals that neutralize combustion by products and hold the products in oil; (b) antioxidants, which prevent oxidation and oil degredation; (c) friction modifiers and antiwear ingredients, which are chemicals that coat the surfaces that are being lubricated to reduce friction and

    wear; (d) pour point depressants, which are chemicals that allow better properties for the lubricant at colder temperatures; and (e) viscosity modifiers, which are chemicals that control the viscosity and viscosity change of the lubricant under various conditions. Some of the chemical components are mixtures of chemicals and oil. For those, oil is an integral part of their manufacture. The concentrated formulation of chemical components that Lubrizol makes and then sells is often called an "additive package." While Lubrizol does sell some components by themselves, the bulk of Lubrizol's sales are additive packages. The additive package is not a finished lubricant product and not something refiners make.

*May 13 Affidavit I* ¶ 5-7 (paragraph numbers omitted.) (A.R. 524-525).

    As OHA further explained:

    From the *May 13* [Dr. Schroeck] *Affidavit* and the other information provided by Lubrizol, we affirm our finding in *Lubrizol* that the firm should be considered an end-user of petroleum products. Lubrizol substantially changed the nature of the petroleum products it purchased by adding various chemicals to different types of petroleum products to produce "additive packages." The additive packages were then sold not as petroleum products themselves but as a product which when added to a purchaser's oil would produce a change in the physical and chemical properties of the purchaser's oil. Lubrizol, in creating its products by adding chemicals to the petroleum products it purchased from refineries, substantially changed the form of the petroleum products it purchased. Consequently, we find that Lubrizol was not a reseller but an end-user of petroleum products. Lubrizol is thus eligible to receive a refund based upon the petroleum products it purchased during the consent order period.

AR at 711-712.

    Plaintiffs' argument boils down to a contention that OHA should have conditioned any refund to Lubrizol on its first producing additional data concerning to whom it sold its products during the 1973-1981 price control period to eliminate plaintiffs's concerns about the possibility of double counting in the event one or more of its customers filed a refund claim based on the same volumes covered by Lubrizol's application. Dr. Schroeck's affidavit also addressed this issue by stating

    Lubrizol customers may have been eligible to claim refunds on the oil that they added, if they were not in the excluded group, but this would not lead

> to any double counting. First, as already explained, a customer who would not know how much oil is in an additive package would consider the entire package as a chemical not subject to refund. Thus, to the extent that any such customer is entitled to and has sought funds from the DOE, it would be proper to assume that they would seek recovery on the oil that they purchased, not the additive package.
>
> We do not know whether anyone downstream from Lubrizol was an eligible end user who filed a claim, but we know that Lubrizol did not claim any downstream users' oil, and we think it was not possible for anyone downstream from Lubrizol to claim on the oil contained in our products.

AR at 530. OHA explained that it had "no evidence indicating what percentage of Lubrizol products were sold to oil companies." AR at 712. The fact that Lubrizol may have supplied additives to the oil industry was deemed "not sufficient for [OHA] to conclude that granting Lubrizol a refund as an end-user would result in significant double counting of petroleum product gallons for refund purchases." *Ibid*.

OHA further appropriately rebuffed plaintiffs' request to pursue this avenue of inquiry as inconsistent with the ground rules established for the refund proceeding in 1987. In the 1987 notice and comment proceeding setting the ground rules, see "Notice Explaining Procedures for Processing Refund Applications in Crude Oil Refund Proceedings Under 10 C.F.R. Part 206, Subpart V," 52 Fed. Reg. 11737, 11740 n.2 (April 10, 1987), OHA rejected a similar proposal to eliminate the possibility of double counting by subtracting from the refund volumetric calculation the volumes of petroleum products covered by the 1986 Stripper Well settlement. OHA found that doing so would unduly delay the refund process and "would be too difficult to implement as a practical matter. ***Ibid***.

OHA found that requiring Lubrizol to produce additional specific data concerning to whom it sold its products would both be inconsistent with the 1987 ground rules and particularly

inappropriate given OHA's announced procedures for concluding the refund proceeding.  See AR at 713, citing 69 Fed. Reg. 29300 (May 21, 2004). [1]  Instead, OHA determined that Lubrizol's eligibility should turn on whether its application established its own eligibility for a refund as an end user, which OHA concluded Lubrizol successfully did based on the firm's submissions documenting its purchases and the fact that Lubrizol did not simply resell those petroleum products but instead utilized them in its additive manufacturing operations.  See AR at 711-712.

 In short, there is simply no basis to sustain plaintiffs' contention that there was "double counting" (See Government's Initial memorandum at 10-11 and 13-14).  Nor is there any support for plaintiffs' contention that Lubrizol was merely a reseller of petroleum, and  OHA therefore reasonably found that there was sufficient evidence to support a finding that Lubrizol was an end user (Governments' Initial memorandum at 9-10 and 14-15).

OHA is required to have a rational basis for its decisions.  ***International Drilling and Energy Corp.***, 930 F.2d at 18.  There can be no doubt that OHA had a rational basis for its determination that Lubrizol was an eligible end user and rejection of plaintiffs' objections to Lubrizol's request for a refund, since those objections were speculative, contrary to the ground

---

[1] On January 13, 2006, OHA issued a notice in the Federal Register concerning its earlier announced plan to make a final, single distribution of the crude oil escrow funds for the purpose of completing this portion of a larger regulatory program that had been eliminated in January 1981.  71 Fed. Reg. 21985 (January 13, 2006).  OHA concluded that pending litigation, including this case, will prevent it from making a single, last round of payments that would have allowed the agency to "exhaust the remaining crude oil refund monies" and thereby bring to a conclusion this seemingly unending program.  71 Fed. Reg. at 2195.  Instead, OHA will distribute approximately 90 % of the fund due to each eligible claimant, keeping the remainder to resolve the pending issues in litigation.  *Id.*  Thus, Lubrizol and other eligible claimants will not be able to receive monies due them until this type of litigation is resolved.

rules for the refund proceeding, and would unduly delay OHA's expressed intention to bring the refund proceeding to a conclusion.

Moreover, since OHA's decision has a rational basis, controlling precedent shows that OHA's decision should be accorded deference. *Phoenix Petroleum Co.*, 95 F.3d at 1567; *International Drilling and Energy Corp.*, 920 F.2d at 18. Deference should also be accorded to the agency administration of it own regulations and procedures. *Sinclair Oil Corp. v. Abraham*, 291 F.3d 822, 826-17 (Fed. Cir. 2002). Deference is particularly appropriate to OHA here since it was interpreting and applying its own longstanding ground rules in administering the refund proceeding.

## CONCLUSION

For the foregoing reasons, plaintiffs' complaint should be dismissed and judgment entered for the Government.

                              Respectfully submitted,

                              _____
                              THOMAS H. KEMP
                              STEPHEN C. SKUBEL
                              U.S. Department of Energy
                              Office of the General Counsel
                              Rm. 6H-045 (GC-32)
                              1000 Independence Ave., S.W.
                              Washington, D.C. 20585
DATE: January 27, 2006              Telephone: (202) 586-8700