IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC. Et al

     Plaintiffs

       V.                      CIVIL ACTION
                                 NO. 1:05CV01467(EGS)
Secretary of Energy, United States
et

     Defendants

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
DC Bar 973578

February 21,2006     Attorney for Plaintiffs

TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT                          1


ARGUMENT                                                     3


I THE DOE OPPOSITION ATTEMPTS TO OBSCURE THE LUBRIZOL
ACKNOWLEDGMENT THAT IT USED THE BASE OILS PRINCIPALLY
TO DILUTE ITS CHEMICALS, AND THAT THERE WAS NOT A
SUBSTANTIAL CHANGE IN THE FORM OF THE PETROLEUM PRODUCTS
WHICH IT HAD PURCHASED; WITHOUT SUCH A SUBSTANTIAL CHANGE,
LUBRIZOL IS NOT QUALIFIED TO BE TREATED AS AN END USER     3


II   THE DOE OPPOSITION ATTEMPTS TO OBSCURE, AS DID
LUBRIZOL ITSELF, THAT THE LUBRIZOL PRODUCT, INCLUDING THE
BASE OILS USED FOR DILUTION, WAS SUBSTANTIALLY SOLD TO
OTHERS IN THE OIL INDUSTRY, AND THEREFORE INEVITABLY THERE
WERE DOWNSTREAM END USERS WHO COULD CLAIM REFUNDS ON THE
BASIS OF THE SAME BASE OIL VOLUMES, RESULTING IN
DOUBLE-COUNTING                                            6


III   DOE'S REITERATION OF OHA'S ARGUMENT THAT THE NEED
FOR CONCLUDING THE CRUDE OIL REFUND PROCEEDINGS JUSTIFIES
ITS FAILURE TO REQUIRE LUBRIZOL TO PROVIDE THE REQUISITE
INFORMATION FOR A PROPER ASSESSMENT OF ITS RIGHT TO CRUDE
OIL REFUNDS PROVIDES NO RATIONAL BASIS FOR AN AWARD 12


CONCLUSION                                                  13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC. Et al

    Plaintiffs

      V.                    CIVIL ACTION
                           NO. 1:05CV01467(EGS)
SAMUEL BODMAN
Secretary of Energy, United States
et

    Defendants

---

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

INTRODUCTION AND SUMMARY OF ARGUMENT

In Federal Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment ("DOE Opposition"), the federal defendants ("Department of Energy" or "DOE") seek to justify DOE's "don't ask, don't tell" approach in the instant award to the Lubrizol Corporation ("Lubrizol")-- i.e. (i) Lubrizol did not "tell" as to either of the central issues determining the propriety of an award on the basis of purchases of base oils, and (ii) the Office of Hearings and Appeals ("OHA") did not ask Lubrizol to provide the critical

1

information.

Those central issues were (i) whether the base oils were actually combined with other chemicals in a chemical reaction which changed their nature, or were merely added to Lubrizol's chemicals in order to dilute them so that the product sold by Lubrizol contained the same base oils in the same form as purchased by Lubrizol, and (ii) to what extent the purchasers of the Lubrizol product containing the base oils were refiners and/or others in the oil industry who passed along the volume represented by the base oils to downstream end users who could claim crude oil refunds on the basis of the volume of base oils for which Lubrizol has been awarded crude oil refunds, thereby effecting "double counting."

Lubrizol never provided the critically important information as to either of those two issues, even though they had been clearly raised by these plaintiffs ("Utilities and Manufacturers") in their challenge to the Lubrizol award. And OHA never asked Lubrizol to provide such information.

Indeed, DOE's Opposition relies on (i) submissions by Lubrizol which deliberately attempt to obscure as to both issues, and (ii) statements in the OHA award decisions which either misrepresent the evidence or cite irrelevant prior determinations by OHA.

Finally, adding insult to injury, DOE repeats its argument that, having delayed deciding the merits of an award to Lubrizol for

2

more than 16 years (from the date of the Lubrizol application,
December 22, 1987 until OHA's initial award decision, August 12,
2004) OHA is justified in failing to conduct an adequate inquiry
because it would delay conclusion of the crude oil refund
proceedings.

Indeed, inasmuch as OHA has properly determined to withhold any
further distribution of crude oil refunds to Lubrizol pending
completion of this litigation, it would serve both OHA's interest and
Lubrizol's interest for OHA now to conduct either voluntarily, or by
virtue of this Court's reversal of the award to Lubrizol, the
requisite factual investigation. Such would involve a lesser delay to
the conclusion of the crude oil refund proceedings and any justified
award to Lubrizol than the delay which will occur by virtue of the
time required for the completion of this litigation in this Court and
on appeal.

ARGUMENT

I THE DOE OPPOSITION ATTEMPTS TO OBSCURE THE LUBRIZOL ACKNOWLEDGMENT
THAT IT USED THE BASE OILS PRINCIPALLY TO DILUTE ITS CHEMICALS, AND
THAT THERE WAS NOT A SUBSTANTIAL CHANGE IN THE FORM OF THE PETROLEUM
PRODUCTS WHICH IT HAD PURCHASED; WITHOUT SUCH A SUBSTANTIAL CHANGE,
LUBRIZOL IS NOT QUALIFIED TO BE TREATED AS AN END USER

OHA's award to Lubrizol on the basis of the base oils it
purchased depended on its finding that Lubrizol "substantially

3

changed the form of the petroleum products it purchased" (A.R. 711-712). OHA relied on that "substantial change" to find that Lubrizol was not a reseller of the base oils it had purchased, but an end user. As and end user Lubrizol was entitled to a presumption of injury, and thereby entitled to refunds; were Lubrizol considered a reseller of the base oils, it would not be entitled to a presumption of injury, and because it had not provided adequate actual evidence of an inability to pass through the overcharges to its customers, it would not be entitled to crude oil refunds for such base oil purchases.

The DOE Opposition cites no evidentiary basis for its OHA's finding of "substantial change", let alone the "substantial evidence" which is required for affirmance of an OHA award. (As the Federal Circuit has explained, a court must "set aside an... agency (OHA) action if it... is based upon findings which are not supported by substantial evidence." Phoenix Petroleum Co. V. Federal Energy Regulatory Commission, 95 F. 3d 1555 (Fed. Cir. 1946).

The best DOE can come up with is the language of a Lubrizol Affidavit which was obviously carefully crafted to mislead the reader to conclude that the mixing of the base oils and the chemicals produced by Lubrizol "substantially changed" the form of the base oils.: "Some of the chemical components are mixtures of chemicals and oil. For those, oil is in integral part of their manufacture." (DOE

4

Opposition, at 4, quoting an Affidavit submitted by Lubrizol in responding to the Utilities and Manufacturers' charge that Lubrizol is a reseller, not an end user, of the base oils.)

Two responses are appropriate:

1. At the most, the Lubrizol quoted language suggests that "some" of the base oils may have been an "integral part" in the manufacture of Lubrizol's products, and such is a far cry from a representation that there was actually a change in the form of the base oils when mixed with the Lubrizol-produced chemicals.

Even more importantly, at an earlier date in the proceedings when Lubrizol was not as wary, it acknowledged that the base oils are properly described as "carrying agents" because they are used as "diluents for chemicals that would otherwise be too thick to handle conveniently. Additives are made in liquid form, using oils, for ease of incorporation into the customer's product. In essence these oils 'carry' the additive chemicals–– thus they are referred to as carrying agents." (Administrative Record, p. 89)

Such an explanation is inconsistent with the OHA finding that there was a "substantial change" in the form of the base oils.

It is significant, indeed compelling, evidence of the force of this earlier acknowledgment that there was no "substantial change" in the form of the base oils, that the DOE Opposition ignores it despite it having been cited by Utilities and Manufacturers in their

5

previously filed memoranda.

2. Even if the Affidavit language is properly construed as representing that there was some change in the form of the base oils as to "some" of the base oils mixed with Lubrizol's chemicals, it is not a representation that there was a substantial change in the form of other base oils which were being used merely as "carrying agents." At the minimum, what is required is an inquiry by OHA as to what portion of the base oils may be construed to have been changed in form, and what portion were merely "carrying agents."

Significantly, OHA never asked, and Lubrizol never told.

Absent an investigation as to the facts with regard to (i) what changes in the form of the base oils occurred, and (ii) as to how much of the volume of base oils was there a significant change in form, there is an absence of any evidence supporting OHA's finding of "substantial change in form", and certainly an absence of the "substantial evidence" required for an OHA award.


II   THE DOE OPPOSITION ATTEMPTS TO OBSCURE, AS DID LUBRIZOL ITSELF, THAT THE LUBRIZOL PRODUCT, INCLUDING THE BASE OILS USED FOR DILUTION, WAS SUBSTANTIALLY SOLD TO OTHERS IN THE OIL INDUSTRY, AND THEREFORE INEVITABLY THERE WERE DOWNSTREAM END USERS WHO COULD CLAIM REFUNDS ON THE BASIS OF THE SAME BASE OIL VOLUMES, RESULTING IN DOUBLE-COUNTING

Try as hard as it can to avoid the fact that to a "significant"

extent the purchasers of the Lubrizol product were refiners or others
in the oil industry (see Plaintiffs' Statement of Points and
Authorities In Support of Motion for Summary Judgment, at 22-23),
DOE's Opposition inadvertently admits as much, or more, when it
quotes the Lubrizol submission that " the (Lubrizol) additive
packages are then sold to Lubrizol's customers who blend the additive
package with other oils that the <u>customer has made or purchased to
make a finished lubricant product</u>." (DOE Opposition, at 3, quoting
Lubrizol affidavit, emphasis supplied). The customers of Lubrizol who
"made" oil are called refiners, and those who "purchased" oil in
order to make lubricants are called resellers.

Thus, the volume of base oil which Lubrizol has added to its
chemicals to dilute them becomes part of the volume of an oil product
sold by Lubrizol's customers, and therefor becomes part of the volume
of a refined petroleum product purchased by an end user who is
eligible to claim crude oil refunds on the basis of such volume.

If Lubrizol is permitted to recover crude oil refunds on the
basis of the base oils it uses to dilute its chemicals, and the same
volume can be the basis for a claim for crude oil refunds by an end
user. e.g. an operator of a fleet of motor vehicles or of a
manufacturing plant, then there is "double-counting", i.e. the same
base oil volume being used twice for claiming crude oil refunds.

As previously explained by Utilities and Manufacturers, such

"double counting" is inconsistent with the formula which the DOE used to calculate the appropriate per gallon refund; it assumed that for each gallon of refined petroleum product (here base oils) there would be one claimant eligible for crude oil refunds.

As Utilities and Manufacturers have further previously explained, the only feasible way to avoid such "double counting" is to permit only the ultimate end users to claim crude oil refunds on the basis of the base oil volumes; anyone upstream of the end user, such as Lubrizol and any refiner or reseller to whom Lubrizol sold its additive packages containing the base oils, would be properly and necessarily considered a "reseller" as to such base oils, and as such not entitled to the requisite presumption of injury needed to obtain crude oil refunds.

The DOE Opposition strives mightily, and on several bases, but without avail, to avoid the impact of this argument against the award to Lubrizol of crude oil refunds on the basis of the base oils it used to dilute its chemicals:

1. DOE attempts to avoid the significance of the fact that Lubrizol's customers were significantly refiners and others in the oil industry by characterizing them as "manufacturers," (DOE Opposition, at 3). In fact, as noted in the very quote from Lubrizol's submission cited by DOE in support of that characterization (and quoted above), the Lubrizol customers were

8

refiners and resellers with downstream customers entitled to claim crude oil refunds on the basis of a volume including the base oils for which Lubrizol claimed refunds.

2. DOE cites three arguments by Lubrizol that there was in fact no possibility of double counting (DOE Opposition, at 5). None of them have merit:

(i) In an apparent reference to the refiner or reseller to whom Lubrizol sold its product, Lubrizol argues that because such a customer "would not know how much oil is in an additive package (the customer) would consider the entire package as a chemical not subject to refunds... (and) it would be proper to assume that they would seek recovery on the oil they purchased, not the additive package."

Lubrizol-- and DOE by quoting Lubrizol-- misses the point, i.e. that it is the Lubrizol customer's customers, i.e. an end user or perhaps even a downstream reseller, who can claim crude oil refunds on the basis of a volume of a lubricant or perhaps of gasoline or diesel fuel to which the lubricant has been added, which contains the base oil for which Lubrizol is here claiming crude oil refunds; that downstream end user or reseller will claim on the basis of an oil product which contains the base oils for which Lubrizol is here claiming crude oil refunds, thereby effecting double counting;

(ii) Lubrizol argues that it "did not claim any downstream user's oil." Utilities and Manufacturers never claimed it did. The

9

argument is irrelevant to the issue, i.e. whether the downstream purchaser could claim refunds on the basis of the same base oils for which Lubrizol claimed, and has here been awarded, crude oil refunds;

(iii) Lubrizol suggests, without explanation, that "we think it was not possible for anyone downstream from Lubrizol to claim on the oil contained in our products." Utilities and Manufacturers have explained how such a downstream claim on the basis of the same base oil volume was not only "possible" but indeed inevitable.

3. Faced with the logical impossibility of avoiding the fact that double counting inevitably would occur if Lubrizol is awarded refunds on the basis of the volume of base oils it used to dilute its chemicals, DOE argues, (i) that there is insufficient evidence to conclude there was "significant double counting", and (ii) that DOE always contemplated and countenanced double counting. (DOE Opposition, at 5). Neither contention has merit:

(i) Neither OHA in its award decision, nor DOE in supporting that decision have any basis for estimating the extent of double counting. They never asked Lubrizol the necessary questions to make such a determination, i.e. to whom Lubrizol sold its product and to what use such customers put Lubrizol's product. And Lubrizol never told, even though both OHA and Lubrizol understood the significance of such questions. If, as Utilities and Manufacturers suspect, a substantial portion of Lubrizol's product was sold to refiners and

10

found its way downstream as part of an oil product, then significant double counting would be an inevitable result.

The natural and logical inference from Lubrizol's failure to provide such information as to customers and customer's use is that it would have been detrimental to Lubrizol's claim, i.e. that it would have indicated significant double counting;

(ii) Faced with the fact that the DOE formula calculating per gallon refunds undisputably contemplated that there would be one claimant for each refined product gallon, i.e. that there would be no double counting, DOE argues that in fact it did contemplate double counting.

In support, it cites a footnote in its decision implementing its policy of providing crude oil refunds in which DOE declined to adjust its refund formula to increase the per gallon distribution because it might need the additional funds to grant refunds to any resellers who would be able to justify recovery on the basis of the same volumes which could be claimed by an end user.(See Plaintiffs' Statement of Points and Authorities In Support of Motion for Summary Judgment, at 33-35

As DOE has subsequently consistently held, such a "double counting" recovery by a reseller would only be countenanced to the extent to which the reseller was able to demonstrate an inability to pass through any increased prices it paid by virtue of overcharges.

11

Because OHA did not treat Lubrizol as a reseller here, it did not require, and Lubrizol did not supply, the requisite evidence to demonstrate an inability to pass through any overcharges to its customers. (Lubrizol did make an early attempt here to suggest such an inability to pass through, offering such in response to an objection by various States of the United States; although it was never formally passed upon by OHA, it would clearly have been found wanting, as has similar evidence uniformly when offered by admitted resellers in claiming crude oil refunds. Indeed, to the best of Utilities and Manufacturers' knowledge, no reseller has been granted crude oil refunds.)

III   DOE'S REITERATION OF OHA'S ARGUMENT THAT THE NEED FOR CONCLUDING THE CRUDE OIL REFUND PROCEEDINGS JUSTIFIES ITS FAILURE TO REQUIRE LUBRIZOL TO PROVIDE THE REQUISITE INFORMATION FOR A PROPER ASSESSMENT OF ITS RIGHT TO CRUDE OIL REFUNDS PROVIDES NO RATIONAL BASIS FOR AN AWARD

Finally, OHA, and now DOE by citing the OHA award decision, attempts to justify the failure to require Lubrizol to provide the information needed to assess properly its application-- i.e. the extent to which the base oils were merely a diluent and the extent to which double counting is likely if Lubrizol is awarded crude oil refunds on the basis of its base oil purchases-- because of a need to

12

conclude the crude oil refund proceedings.

The argument is akin to that of a defendant who has murdered his parents, and asks for mercy because he is an orphan.

Having delayed its award decision for 16 years after receiving the Lubrizol application, OHA is hardly in a position to argue that the need to complete review of all claims justifies its failure to make the necessary inquiry.

Moreover, as noted by DOE itself here (DOE Opposition, at 6, footnote 1), OHA itself has recognized the impropriety of completing distribution to Lubrizol of the remaining available funds (Lubrizol has already received two-thirds of the refunds to which it would be entitled if the award made it is upheld) as long as the award to it is under challenge.

Accordingly, even if the need for concluding the crude oil refund proceedings would justify a failure on the part of OHA to discharge its investigatory duty, such a failure here has not achieved the desired goal of concluding the proceedings.

Indeed, the vacation of the OHA award to Lubrizol to the extent to which it relies on the base oil purchases, which Utilities and Manufacturers here seek, would result in an earlier conclusion of the crude oil refund proceedings then a continuation of this litigation.

CONCLUSION

For the reasons above set forth, and those set forth in Plaintiff's Statement of Points and Authorities In Support of Motion for Summary Judgment, OHA's award to the Lubrizol Corporation on the basis of its purchase of 335.6 million gallons of "various base oils" is not supported by the requisite substantial evidence nor is it rational.

Summary Judgment should be entered reversing and vacating the award to Lubrizol and remanding the matter to OHA for the elimination of any award to Lubrizol based on its purchases of the "various base oils."

Respectfully submitted,

_____

Philip P. Kalodner
208 Righters Mill Road
Gladwyne PA 19035
DC Bar 973578

February 21, 2006          Attorney for Plaintiffs

14