**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------
                                          )
CONSOLIDATED EDISON COMPANY               )
OF NEW YORK, INC., *et al.*,               )
                                          )
            Plaintiffs,                   )
                                          )
      v.                                  ) Civil Action No. 05-1467 (EGS)
                                          )
SAMUEL BODMAN, Secretary                  )
      of Energy, *et al.*,                  )
                                          )
            Defendants.                   )
---------------------------------------------

**<u>MEMORANDUM OPINION</u>**

Pending before the Court are plaintiffs' and defendants' motions for summary judgment.  Plaintiffs bring this action to challenge a crude oil refund award by the Office of Hearings and Appeals ("OHA") of the Department of Energy ("DOE") to Lubrizol Corporation ("Lubrizol") as a beneficiary of the crude oil overcharge restitution program.  After the OHA's initial determination in favor of Lubrizol and award of $557,736, *see* Administrative Record ("A.R.") at 227-29 (OHA Decision and Order, August 12, 2004), plaintiffs filed a complaint in this Court contesting the determination.  *See Consol. Edison Co. of N.Y. v. Abraham*, No. 04-1732-EGS (D.D.C. 2004).  OHA agreed to reconsider its determination and the case was dismissed without prejudice. Upon reconsideration, OHA reached the same conclusion, though using different reasoning.  A.R. at 708-14 (OHA Supplemental

1

Order, June 27, 2005).  Plaintiffs challenge the new decision, arguing that OHA's determination violates long-standing principles and that its conclusions lack substantial evidence.

Upon consideration of the parties' motions, the responses and replies thereto, the applicable law, and the entire record, the Court determines that OHA's construction of its rules and regulations is reasonable, and that its conclusions are supported by substantial evidence.  Therefore, for the reasons stated herein, defendants' Motion for Summary Judgment is **GRANTED** and plaintiffs' Motion for Summary Judgment is **DENIED**.

## BACKGROUND

The history of this case is rooted in the OPEC oil embargo of the 1970's.  *See Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1255-56 (D.C. Cir. 2006).  In response to the embargo, the DOE imposed price controls on crude oil sold in the United States between 1973 and 1981.  *Id.* at 1255.  When certain producers were found to have violated the price controls and overcharged for crude oil, the DOE obtained refunds from them. *Id.*  A long-running and complex lawsuit then commenced regarding the fate of the refunded overcharges, which culminated in a settlement whereby DOE agreed to disburse refunds to the federal and state governments, and to individual injured parties out of a Reserve Fund.  *Id.* at 1255-56.  This restitution system for

2

individual parties is known as "Subpart V." *Id.* at 1256; *see* 10 C.F.R. Pt. 205, subpt. V.

OHA developed procedures for disbursing refunds under Subpart V in order to compensate applicants who suffered economic injury due to the improperly high prices of crude oil. *See Implementation of Special Refund Procedures*, 52 Fed. Reg. 11737 (Apr. 10, 1987). These procedures resolve three issues: (1) the types of petroleum purchases for which refunds are available; (2) requirements for demonstrating economic injury from these purchases; and (3) the amount of refund. *See id.* The method for determining the amount of the refund is the "volumetric" method, which calculates a refund amount per gallon of oil by dividing the total collected overcharges by the amount of oil used in the United States from 1973 to 1981. *See id.* at 11739-41.

Relevant to this case are OHA's standards for demonstrating economic injury. In order to efficiently adjudicate refund applications, OHA utilizes presumptions in deciding injury:

> Applicants who were end-users (ultimate consumers) of petroleum products whose businesses are unrelated to the petroleum industry and who were not subject to the DOE price regulations are presumed to have absorbed rather than passed on alleged crude oil overcharges, and need not submit any further evidence of injury beyond volumes of product purchased in order to receive a refund.

*Id.* at 11743-44. In contrast, "[r]esellers and retailers of petroleum products must submit detailed evidence of injury, and may not use presumptions of injury established by OHA in refund

cases involving refined petroleum products." *Id.* at 11744. OHA's procedures do not define the terms of "reseller" or "end-user."

At issue in this case is the refund application of Lubrizol, a specialty chemical company, which purchased petroleum products and then created and sold chemicals which contained significant amounts of petroleum components. A.R. at 708 (OHA Supplemental Order, June 27, 2005). Lubrizol's principal products are "additives" for engine oils, automotive and industrial fluids, and gasoline and diesel fuels. A.R. at 88-89 (Lubrizol submission to OHA, July 2, 1992). These chemicals and additives enhance the performance of lubricating oils and fuels. *Id.* at 88. On December 14, 1987, Lubrizol submitted an application for a refund with the crude oil overcharge refund program, seeking to be compensated for approximately 368 million gallons of petroleum products. A.R. at 1-2. (Application for Crude Oil Refund)

In the decision now at issue, OHA first determined that Lubrizol purchased petroleum products that qualify for the refund, which plaintiffs do not contest. *Id.* at 709-10. OHA next determined that Lubrizol was not a reseller, but instead an end-user of petroleum products. *Id.* at 710-12. In doing so, OHA utilized the definition of the term "reseller" from the original price control regulations, which defined it as a business that resells petroleum products "without substantially changing their

4

form." *Id.* at 710 (citing 10 C.F.R. § 212.31 (1975)). Based on Lubrizol's submissions, OHA concluded that Lubrizol did substantially change the nature of its products, and thus was not a reseller. *Id.* at 711-12. Therefore, under OHA's presumption of injury, Lubrizol was granted a refund of $557,736. Id. at 712-13.

Plaintiffs are a group of utilities and manufacturers, who will cumulatively receive a significant portion of the total refunds under Subpart V. *See Consol. Edison Co. of N.Y. v. Bodman*, 445 F.3d 438, 440, 443 (D.C. Cir. 2006) (discussing similar group of plaintiffs). Plaintiffs challenge the award to Lubrizol because it will decrease the refund amount available to them. *See Consol. Edison Co. of N.Y. v. Richardson*, 233 F.3d 1376, 1382-83 (Fed. Cir. 2000) (holding that successful oil refund claimants have standing to challenge an oil refund award to a third party).

**STANDARDS of REVIEW**

This Court's review of OHA's decision, made pursuant to the Emergency Petroleum Allocation Act of 1973 ("EPAA"), is limited. Agency action pursuant to the EPAA will be vacated "only if it is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." *Phoenix Petroleum Co. v. FERC*, 95 F.3d 1555, 1567 (Fed. Cir. 1996). "Because substantial evidence means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion," courts "will reverse for lack of substantial evidence only when the record is so compelling that no reasonable factfinder could fail to find to the contrary." *Palace Sports & Entm't, Inc. v. NLRB*, 411 F.3d 212, 220 (D.C. Cir. 2005) (internal quotation marks omitted).

In addition, federal courts have "recognize[d] DOE's administrative expertise, accord[ed] the agency's determination great deference, and must approve the DOE decision if there is a rational basis for it." *Phoenix Petroleum*, 95 F.3d at 1567. Finally, the agency's interpretation of its own rules and regulations is entitled to substantial deference, and will be approved so long as it is "reasonable." *Goodyear Tire & Rubber Co. v. DOE*, 118 F.3d 1531, 1539 (Fed. Cir. 1997).

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's opposition, however, must consist of more than

mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

## ANALYSIS

Plaintiffs challenge OHA's determination that Lubrizol qualifies for a refund on several grounds.  Though their arguments somewhat overlap, plaintiffs articulate three distinct reasons why OHA allegedly erred.  First, they contend that it was inappropriate for OHA to rely on the definition of reseller drawn from the original price control regulations.  Second, they argue that even if OHA's definition of reseller is appropriate, the determination that Lubrizol was not a reseller lacked substantial evidence.  Finally, they contend that OHA's decision could lead to unlawful "double counting" because Lubrizol's products could have become components in petroleum products that were bought by another end-user, who could file a refund application for the "same" oil.

## I. Whether Lubrizol is a Reseller or End-User

Plaintiffs' first argument plainly lacks merit.  OHA has previously explained why the price-control-regulation definition of reseller is relevant.  Under the price control regime, "[r]efiners and resellers (unlike end-users of refined petroleum

7

products) had the opportunity under DOE statutes and regulations to pass through overcharges in the prices of the same products resold within the same regulated industry." *Special Refund Procedures*, 52 Fed. Reg. at 11742.  Because resellers could pass through increased oil costs, they probably were not injured by the higher costs, and thus are not entitled to a presumption of economic injury.  *See id.* at 11742 n.6.  Therefore, it is rational for the OHA to use the price-control-regulation definition of reseller in determining whether an entity is entitled to a presumption of injury.  *See Phoenix Petroleum*, 95 F.3d at 1567.  Accordingly, plaintiffs' first argument is rejected.

Plaintiffs' second argument presents a closer question. They contend that Lubrizol satisfies OHA's definition of reseller, and is therefore not an end-user, because Lubrizol resold petroleum products without "substantially altering their form."  Plaintiffs rely on Lubrizol's own description of its "additive" products:

> These additives often include detergents, dispersants, viscosity improvers, oxidation inhibitors, extreme pressure agents, friction modifiers, pour point depressants, rust and corrosion inhibitors and other specialty chemicals, in a wide range of variations and usually in multi-functional, additive systems.  Base, specialty oils and solvents are used as processing mediums to carry out certain chemical reactions and as diluents for chemicals that would otherwise be too thick to handle conveniently.  Additives are made in liquid form, using oils, for ease of incorporation into the customer's product.  In essence these oils "carry"

the additive chemicals – thus they are referred to as
"carrying agents."

A.R. at 89 (Lubrizol submission to OHA, July 2, 1992).
Plaintiffs argue that because oil is used merely to "carry" the
chemicals, it has not been substantially altered.  In effect,
they claim Lubrizol resells unchanged oil with other chemicals
sprinkled in.

In reaching the opposite conclusion, OHA relied principally
on the 2005 affidavit of Dr. Calvin Schroeck, Ph.D.,  Lubrizol's
Manager of Patent Technologies.  *See* A.R. at 711.  In his
affidavit, Dr. Schroeck explained that some of the chemical
additives were "mixtures of oil and chemicals," where "oil is an
integral part of their manufacture."  A.R. at 525 (Second
Affidavit of Calvin Schroeck).  It was also his understanding
that purchasers of Lubrizol's products "would consider the
product, including both chemicals and the oil they contain, as a
chemical additive."  *Id.* at 526.  Moreover, another Lubrizol
submission elaborates on the use of "carrying agents."  In a 1996
clarification to its 1992 submission, Lubrizol explained that
"[w]ithout those carrying agents Lubrizol's additive packages
would either be too thick for customers to use, or in a different
chemical form, because carrying agents are sometimes the mediums
for important chemical reactions in the manufacturing process of
our products."  A.R. at 170 (Lubrizol submission to OHA, August
14, 1996).

Contrary to plaintiffs' arguments, these descriptions of Lubrizol's products provide substantial evidence for OHA's finding that Lubrizol substantially alters oil in producing its additives.  Lubrizol's 1992 submission describes the oil as being used as a dilutant and as a medium for chemical reactions, which implies that the resulting substance is chemically different than the ordinary oil itself.  The 1996 submission more clearly states that the use of oil as a carrying agent results in a product with a different "chemical form."  Dr. Schroeck's statements, that oil is integral to the manufacture and that the oil in an additive is considered part of the additive, are also persuasive evidence that Lubrizol's manufacturing process does more than repackage oil.  A reasonable mind could accept this evidence as adequate to support OHA's conclusion that Lubrizol was not a reseller, and the record certainly does not compel a contrary finding.  *See Palace Sports*, 411 F.3d at 220.  Accordingly, plaintiffs' second argument is rejected.

## II. Violation of the "Double Counting" Principle

Plaintiffs' final argument is that OHA's decision was irrational because it violates the principle of not "double counting" oil.  Plaintiffs argue that an underlying assumption of the oil refund program is that each gallon of oil should only lead to one refund claim.  They draw this assumption from common sense, and from the design of the "volumetric method," which

implicitly rests on the idea that only one end-user was injured
for any particular amount of oil consumed.  They claim that the
award to Lubrizol violates this principle because Lubrizol's
products were sold to oil companies, mixed with petroleum
products, and ultimately sold to some end-user who could claim a
refund on the entire substance.  In this way, an end-user could
assert a claim on the same petroleum that was used by Lubrizol,
which is double counting.

Defendants respond that OHA has made exceptions to the
double-counting principle in the past because of administrative
efficiency, and is allowed to do so again.  For example, in its
original implementation of the refund program, OHA rejected a
more complicated volumetric method because it was too complex to
calculate and administer.  *See Special Refund Procedures*, 52 Fed.
Reg. at 11740 n.2.  The OHA acknowledged that the method it
adopted "could produce double or even triple counting of
volumes."  *Id.*  Nonetheless, the suggested modification was "too
difficult to implement," and "would defeat one of the principal
purposes of the settlement: achieving an expeditious resolution
of all crude oil refund claims."  *Id.*  In fact, the regulations
implementing the refund program require "the OHA to 'take into
account the desirability of distributing the refunds in an
efficient, effective and equitable manner.'"  *Consol. Edison Co.
of N.Y. v. Abraham*, 405 F. Supp. 2d 1, 2 (D.D.C. 2005), *aff'd by*

11

170 Fed. Appx. 130 (Fed. Cir. 2006) (quoting 10 C.F.R. § 205.282).

In this case, there was no solid evidence that Lubrizol's refund would necessarily lead to double-counting. A.R. at 712. Plaintiffs can only point to general statements that Lubrizol sold its products to domestic oil companies, which OHA found insufficient. *Id.* Because an exact calculation of double counting depends on historical data not before it, OHA found the claim of double-counting to be too speculative. *Id.*

A more detailed investigation of Lubrizol's sales in the embargo period might definitively answer whether double-counting could occur, but the inquiry would likely be difficult and delay proceedings. Because OHA is required to consider administrative efficiency in the refund process, *see* 10 C.F.R. § 205.282(e), it is rational for OHA to disregard the possibility of double counting in this instance. *See Phoenix Petroleum*, 95 F.3d at 1567. In addition, as OHA has allowed exceptions to the double-counting principle before, and considered Lubrizol to have made a valid refund claim, it was rational for OHA to award Lubrizol a refund even if it would create double counting. Therefore, plaintiffs' final argument is rejected.

### CONCLUSION

The Court concludes that OHA's decision finding Lubrizol to be an end-user of petroleum products and thus entitled to a

refund was both rational and supported by substantial evidence. Accordingly, defendants' Motion for Summary Judgment is **GRANTED** and plaintiffs' Motion for Summary Judgment is **DENIED**.  An appropriate Order accompanies this Memorandum Opinion.


**Signed:**    **Emmet G. Sullivan**
            **United States District Judge**
            **February 1, 2007**